Good morning, Your Honors. My name is Sylvia Esparza, and I represent Mr. Uribe-Santillan. The question for this court really today is to decide whether Mr. Uribe has been deprived of his due process. And the answer to that question is yes. If I just may briefly go over his procedural history, which will show how Mr. Uribe was deprived of his day in court. On August 1, 2012, Mr. Uribe appeared with his former counsel in immigration court. At that time, he requested attorney prep time. The immigration court allowed him 29 days to come back to court and take pleadings and also to present any applications for relief. At that time, on August 29, when he came to court, Mr. Uribe's former counsel admitted that he had entered without inspection and then disputed that he had been convicted of a crime involving moral turpitude. The court asked if he had applications for relief at that time, and Mr. Uribe's former counsel said no. Sotomayor, your claim for ineffective assistance is that he didn't seek a continuance of the proceedings in order to pursue the I-130, correct? Well, there's several. One is that he didn't submit the applications for relief, which there's a presumption of prejudice this Court has found in various cases. But the application for relief would have been a continuance of the removal proceedings to seek the I-130. That's another issue. Well, I don't understand what other relief he could have sought. So he was seeking cancellation of removal for certain nonlawful permanent residents. Right. And plus, he was also eligible for adjustment of status based on that. Right. But the argument for cancellation of removal was that he was eligible for an I-130. He didn't have any other basis to seek cancellation of removal, did he? There's two forms of relief. He could have had cancellation of removal for nonlawful permanent residents,  Right. But he wasn't a lawful permanent resident, correct? Right. He wasn't. The only way he would have gotten relief, and I don't think we're going to make sure we're on the same wavelength. Yes. The only way he could have gotten relief was if he had gotten either adjustment of status or gotten an I-130 visa, correct? No, Your Honor. So he was eligible for cancellation of removal for certain nonlawful permanent residents. So if you're not a nonlawful permanent resident, you can apply for cancellation of removal and get your green card through that mechanism. If you've got 10 years physical presence, if you have qualifying relatives, good moral character and hardship. Okay. And you can also get adjustment of status through that I-130. Fair enough. But for either of those, either of those avenues of relief. Correct. You would be ineligible if you had a crime involving moral turpitude, correct? Yes. But you could, well, for the cancellation of removal, you can't have a crime involving moral turpitude. For the adjustment of status, you can request a 212-H waiver to wait. Right. So in other words, for each of them, so the question I want to focus on for a second is if there was a crime of moral turpitude here, was counsel then ineffective? Yes. Why? Because if there was a crime involving moral turpitude, he still would have been eligible for a 212-H waiver under the adjustment of status provision. Right. So we would have to determine that the failure to pursue that avenue of relief, what's the standard of prejudice that we have to look at? So let's assume that you're not eligible absent a waiver for that status. Right. And let's also assume that you can't get cancellation of removal if you have a CIMT. Okay. Assume both of those. What kind of prejudice do we have to find from counsel's actions? So the standard of prejudice on an ineffective assessment of counsel claim is if there is plausibility in the form of relief, not prima facie as the government pointed out. Prima facie is for a regular motion to reopen. Okay. And what I want you to focus on, because what would be helpful to me is this. And, again, I'm assuming there was a crime involving moral turpitude. I know you argue the contrary in your brief. Right. If there is one, how do we measure plausibility if the avenue of relief requires a discretionary waiver? I mean, I understand how to measure plausibility when we look at cases. Right. But when we're looking at a discretionary waiver by the Attorney General, if you will, how do we measure plausibility? Well, our position would be that plausibility is that there was a reasonable basis, right, on its face, without any more inquiry, without any more digging into it at that moment in time, was it reasonable for the judge to say, okay, he looks like he's eligible for cancellation of removal. Again, he never even raised the issue of the other alternative relief. Well, again, here's the problem I'm having, so I want you to help me. If he had a CIMT. Correct. He was not eligible for cancellation. For cancellation of removal. Right. So now we're just looking at the discretionary waiver with respect to becoming a lawful permanent resident, if you will. Correct. And so the question is, how do we measure the plausibility that the government would grant that discretionary waiver? For the adjustment of status, he had a really good case for a 212-H waiver because there he all had to prove his extreme hardship. He had three USC children. One of them was severely sick. He had diabetes, took insulin all the time, had three to five times he had to take insulin. He had a seizure disorder. So the extreme hardship would have been much easier than extreme and unusual hardship in the cancellation of removal. I agree. So he had not just plausible for the adjustment of status issue. He had a prima facie case for adjustment of status coupled with that 212-H waiver. But, again, that item never even came up. Slow down for a second. Sorry. Can you tell me what do we do? Does the record reflect what the status of the I-130 application is today? Is it still? No, the record does not reflect. Is it still not current? There is a visa available. There is a visa available and it's been available since 2015. So tell me what if you prevail and we say there was ineffective assistance of counsel, what do we do? Can I clarify something? Sure. The government concedes that counsel's performance was deficient, correct? Yes. So all you have to show is the prejudice prong here. Correct. Right? Yes. Okay. So I think my colleague was asking what's the remedy you're asking for? Exactly. Right. So the remedy would be for this Court to, of course, grant the petition and remand to the Board of Immigration Appeals for further proceeding, because if there was a prejudice, which this case, the case law here in this Court said that there's a presumption of prejudice when there's a failure to file applications for relief when the Court has given a deadline. Focus on the remedy for a second. Okay. We're both, we're now assuming that you prevail. We send it back to the BIA to do what? He can do adjustment of status, Your Honor, at this point, because he has I-130 that's approved and available. And he's eligible for the 212-H waiver. And how does that work? Just tell me how that works. He has to apply for adjustment of status. He might not get it, correct? Right. I mean, as a matter of discretion, he might not get it. So are we telling the BIA to stay the removal proceedings while he seeks adjustment of status? Tell me what you're seeking. Right. So normally what happens is we would then, if this case was remanded to the Board of Immigration Appeals, we would then file all our applications together, the adjustment of status, the 212-H waiver, and then ask the BIA to remand back to the court so that the court can then entertain that adjustment of status application with the waiver. That application would be made by the, the application would be made to the IJ, then, correct? Yes. It can be done with. That's what I was talking about. With the immigration court, yes. So if we remand to the BIA, the BIA would then in turn remand to the IJ. Correct. Kind of like the court of appeals to the district court. Correct. And your argument here is that whether or not, although you argue that at least one of the crimes are not crimes of moral turpitude or maybe both, but your, your main argument, it seems to me, is that whether they are crimes of moral turpitude or not, that there was a plausible basis for the appellate to pursue, to pursue his claim before the administrative law judge, is that right? Yes, Your Honor. In addition to that, the, he didn't even get to argue, he didn't even get to present his case before the immigration court. And we all understand the lawyer was ineffective. Now, let me parse this. I know you don't have much time left. If there is a crime involving moral turpitude, you can't get cancellation of removal. No, you can't. So if we concluded that and gave you relief, we would send it back to the BIA to allow you to pursue adjustment of status. Correct, Your Honor. Okay. Yes. Do you want to reserve the remainder of your time? Yes, I would. Thank you. Good morning, Your Honors. My name is Linda Doe, and I represent the Respondent, the United States Attorney General. In this immigration matter, Petitioner Arrube has not shown that reopening his 2012 proceedings is warranted, where he has not demonstrated prejudice by any inefficacies. Why hasn't he demonstrated prejudice? That's the we're all we're all assuming the first prong of Strickland was met. Lawyers should have applied for a continuance. Your colleague says, I've got a plausible case for adjustment of status, even if there was a crime involving moral turpitude. The IJ may conclude otherwise, but why shouldn't we let Mr. Arrube pursue that course? Because he hasn't shown that he would be eligible for adjustment of status. He hasn't not shown that he has a viable claim for adjustment of status. He'd have to get a waiver, but waivers are granted, and he's been in the country for a long time, and there's family hardship. Is it implausible that he would be granted a waiver? To establish eligibility for adjustment of status, you need to have an application for adjustment, have an immediately available visa, show that he'd be eligible to receive such a visa, and be admissible. In this instance, he's not admissible to the United States. The language of the plausibility standard is they use may, and that's how we conflate the discretion of the agency into the plausibility standard. It's a may have been eligible for relief standard. It's not a would have been eligible for relief standard. I respectfully note, Your Honor, that in this instance, he has not shown. You didn't answer my question. You agree with me. That's the standard, right? Yes. Okay. So what part of this he's – I understand he's got to get a waiver, but what other part of eligibility for adjustment of status hasn't he shown? He hasn't shown that he'd be eligible to receive such a waiver. Why? In this instance, he claims that he would be eligible for an F-1 or F-2 visa as an unmarried son of an LPR or a United States citizen father. He submitted tax documents indicating that he's been married and has been married as early as 2003. So in light of that, it's uncertain that he would be eligible to receive such a waiver. Why? The standard is may, so he doesn't have to show it's certain. He just – so the whole thing on an ineffective assistance of counsel claim is that because his counsel performed deficiently, he never had a chance to put his claim on the merits to the agency. And it's – that's why the standard is really quite low. The may standard not, you know, has a viable claim. And it's also up to the agency in the end to determine the merits of that claim. Your Honor, that's the – he was able to submit evidence with his motion tree open, and in that he could have submitted an application for adjustment of status. He could have submitted further evidence in support of a 212-H waiver. In this instance, he submitted a cancellation application, and in that cancellation application, he stated that he was married. And he further submitted tax documents indicating that he had been married as early as 2003. So then explain your – you've said that twice, but explain your position. Is your position that because he admits he was married, he's ineligible for an F-1 or F-2 waiver? Yes, because those categories require that he be an unmarried son. So in addition to being inadmissible to the United States – What you're doing is asking us to kind of adjudicate the merits of his claim, and that's not what we're supposed to be doing. Well, we're actually looking at prima facie eligibility. The statutory requirements that set forth – So what you're saying is the record – the record in this case demonstrates his ineligibility for a waiver? Regarding a waiver, Your Honor? Yeah. That's all we're talking about is a waiver. I would say that his 2008 conviction supports against warranting – Well, of course it cuts against it. That's not the question. The question is, let's assume that his lawyer had acted competently and asked for continuance to pursue adjustment of status. I don't think he can get cancellation because he's ineligible. For adjustment of status, he'd have to get a waiver because of his crime involving moral turpitude. Are you telling me he's ineligible for any waiver? That would be uncertain without having an application for a waiver, Your Honor. There was no application submitted. Right, because his lawyer was ineffective in failing to file an application for cancellation of removal. That's why there's no application. But he didn't submit it with his motion to reopen, either. His second lawyer may have been ineffective also. I don't know who it was, in not submitting the application. She may be sitting here. In not providing sufficient evidence on the motion to reopen. Is that what you're saying? Yes, Your Honor. Because in the motion to reopen, he alleges that his former counsel failed to file an application for cancellation of removal on his behalf, yet submitted it with his motion to reopen. Somebody should have, with the motion to reopen, said here's what counsel should have done. It could have provided an application for adjustment of status, as well as the application for the 212-H waiver. But that didn't. It isn't there, so we don't know. Yes, Your Honor. Okay. And as such, he hasn't established the prerequisites for an adjustment of status application. So I understand your position. It's that Mr. Arebe hasn't demonstrated prejudice because his application in the motion to reopen doesn't show what his doesn't contain what his original counsel should have filed had he operated effectively. He doesn't have not shown the viability of his claim for adjustment of status. All right. Counsel, do you have any additional arguments you want to make? I just wanted to further note that he is statutorily precluded from cancellation of removal in light of the fact that his 2008 aggravated attempted theft or attempted forgery conviction. I want to ask you one question about the conviction, if you will. It's only a conviction of one crime, is it? In other words, I've read the complaint and I've read the judgment of conviction. I know you all tried to put in the plea agreement, but the I.J. didn't let you do it. But it's only one crime, attempted forgery, right? It's not three counts or several counts. It's attempted forgery in violation of several statutes. Yes, Your Honor. So is it a single sentence? Yes. It was a nine-month sentence. Yes. But, I mean, it's not he wasn't sentenced on two counts. He was just simply sentenced for attempted forgery, correct? I believe so, Your Honor. Okay. And the violation of Nevada Rights Statute Section 205.110 is categorically a crime involving moral turpitude, where it expressly requires that an intention to fraud be an element of the offense. All right. Thank you, counsel. I'm going to move things along here. I think you raised a good argument that I think we have to ask the opposing counsel about. Thank you, Your Honors. And we request that the government or court deny the petition for review and government rest on its brief. Thank you. Thank you. Counsel, the government counsel made the point that on the motion for reopening, the application for cancellation removal wasn't submitted. What's your response to that? Your Honor, she's correct that the motion to reopen did not include the adjustment of status. And that is because at that time when we filed the motion to reopen, there was no visa available at that time. However, for a motion to reopen based on ineffective assistance of counsel, you do not need to submit all of the applications. That's for a regular motion to reopen where you submit new facts. If you reopen this case, this is what I would submit, but not on an ineffective assistance counsel claim motion. That only requires you to identify the deficiencies in the proceedings, which we did. Is your client eligible for adjustment of status? Yes, he is, Your Honor. He has a visa available. How can we tell that from this record? Yes. It's hard to tell because none of the applications were filed at that time. And again, in 2012, there was no visa available, so the attorney didn't identify that potential relief and didn't submit the application. We didn't file it in 2012 because it was only one month later or a few months later and there was no visa available at that time. So we couldn't have filed a motion to reopen to include that other application because it wasn't available at that time. We just identified, hey, there is this relief available in the near future, and near was just like a year or two out. And that's why it wasn't submitted at that time. So it wasn't ineffective on our part for not filing because it's not required. I did want to also just address the other issue about prima facie. That's the wrong standard, Your Honor. The standard is just plausibility, a plausible ground for relief, not prima facie,  where he meets all of the requirements and then give it to the judge to see if as a matter of discretion he's going to grant. So they're using the wrong standard, the correct standard, which is plausible grounds for relief. All right. Thank you. Thank you very much, counsel. Uribe-Santillan v. Sessions is submitted and will take up U.S. v. Juan.
judges: Wardlaw, Hurwitz, Oliver